May it please the Court. My name is Patrick Madden of K&L Gates. Together with Todd Nunn, I represent Defendant Xerox Business Services. I'd like to reserve five minutes for rebuttal. This is a summary judgment case subject to de novo review, focused on the question of whether Xerox Achievement-Based Compensation, or ABC plan, properly paid plaintiff at the Washington minimum wage rate. There are three key uncontested facts that help drive the decision here. The first is the evidence is uncontested regarding how plaintiff was paid. When in training, she was paid at an hourly rate. She then moved to an ABC plan, which is in the record, that used quality, efficiency, and productivity measures to calculate weekly ABC pay for all hours worked. If weekly ABC pay did not equal or exceed the minimum wage at times the total hours worked, then Xerox made an additional weekly subsidy payment to ensure that employees always received the minimum wage rate. Was this a piece rate plan or an hourly plan? What is it? Well, Your Honor, we... The $20,000, $40 million question or whatever. There is the $40 million question. We believe that there is strong evidence that it is a piece rate plan. We believe even stronger that it is not an hourly plan. And under the department's interpretation... Well, they claim it's a... No, they don't claim it's a piece rate plan. They claim it's an hourly plan. They claim it's an hourly plan, Your Honor. And that you're not paying the minimum wage for every hour that they work. For each hour, looking discreetly at each hour, yes, Your Honor. Tell me why it's either not a piece rate plan, or why it is a piece rate plan or not an hourly plan. Well, let me get to the hourly first, and then I'll get to the piece rate, because there are a number of different pieces to this. It's not an hourly plan because... Because. First plaintiff admitted... If I could follow up with Judge Pius for just a moment, one of the things that I think you're going to get to, and I just want to make sure that I hear that, is that you made reference to the court having a false dichotomy between either the hourly or piece meal plan. And I'm curious as to how you came to the point that you call the court having a, quote, false dichotomy, end quote. Which I think follows up with Judge Pius. In his opinion, Judge Kuhnhauer states that we had to choose between hourly and piece rate, and he didn't conclude that it was either. He said it is more closely aligned to an hourly compensation system. The issue under Washington law is, is it anything other than hourly? And so that's how we came to the conclusion about the false dichotomy, is I think Judge Kuhnhauer looked at it, is it this or is it this? He didn't look at the broad spectrum of other alternatives available. In terms of the question about why it is not hourly, the first point in relation to that is that plaintiff admitted it wasn't hourly. She testified that she was paid hourly when she was in training, and she testified that she was paid a production rate once she moved to the ABC plan. Well, that's from her perspective, but the question is whether the compensation scheme complies with whatever the statute says is an hourly plan. You know what I mean? She's just getting her paycheck, right? Correct, Your Honor. And so that was the start of a series of different reasons. I think if you start with the evidence itself, she testified it was an hourly. I think there's also evidence that the plan itself was designed to pay a weekly amount and, in fact, paid weekly amounts. Because they don't even do this anymore, right? You stop doing this. Yes, Your Honor. And you don't want to certify? Well, the question of certification of the State Supreme Court, we certainly could certify. This court could do that. We believe that it isn't necessary because, first, there is no unresolved law. And I think Judge Kunauer agreed with our perspective on the law. There are no — It's more closely aligned with an hourly. Well, perception of the case law and the interpretations of Washington law. And there were no undisputed facts. The plan is the plan. The real issue in this case was that Judge Kunauer looked at the plan, kind of ignored some of the niceties and said it uses production minute, therefore it must be hourly because it has an element of time. And this court's in as good a position as the Washington Supreme Court to look at the compensation plan and interpret the compensation plan. Really, because anything we say may be binding on our district courts, but it certainly doesn't bind the State Court of Appeal or the Washington Supreme Court. They have a certification procedure. I'm arguing a case there next month that's been certified. Mr. Cote and Mr. Marshall both filed amicus briefs in the case. We've been through that process. I'm still waiting for you to tell me why it's an hourly plan. Or not an hourly plan. The third aspect of it is, you know, an hourly plan, it's common sense in one sense is an hourly plan pays based on time, the passage of time. Yesterday you could ask how long it snowed. That's a measure of time. This plan paid based on production. Based on minutes expended? Based on particular amounts of time handling incoming calls. So in any one hour, an employee, if they were on incoming calls for 50 minutes, received a different pay than if they were on calls for 40 minutes. Now, Plano submitted a new case, supplemental case in this matter, the Dimitri over Sakuma Brothers case. It's actually one of their cases that got certified to the state Supreme Court. In that case, it dealt with rest breaks and an issue not related to the Minimum Wage Act. But in that case, the court also addressed what it means to be paid a piece rate. And the court expressly stated a piece rate is tied to the employee's output and is earned only when the employee is actively producing. That's exactly what happens under the ABC plan. Verizon paid Xerox for production minutes. How much time was spent on incoming calls? Not how much time was spent handling matters generally. And so it was a production unit in their contract. It's recognized in the industry as a production unit. Just because there's a contractual agreement between Verizon and who was the other one? Xerox, our client. Why does that mean that that translates into an hourly, not an hourly rate? Well, because the issue is a piece rate is based on production of the product that's sold. And in this case, the product that was sold was a production minute, the time on the phone. And the court in Demetrio explained that you have to think of this like a chess clock where you're hitting a button and it's going on and off. And Demetrio recognized that a piece rate is something where it's on and off based on production. And that's exactly what happened in this case. I'd also call your attention to some other aspects of the compensation that were not tied to minutes. The subsidy pay was a weekly payment. It was a lump sum amount paid per week. It's not broken down by the minute or any other avenue. They received bonuses that were paid by the week. Under the analysis in the Department of Labor and Industries guidelines, it says that if you're paid anything other than hourly, then you use a weekly analysis. Now, the last two notes I'd like to make in relation to the hourly piece of this, and I addressed also the piece rate piece Demetrio really lends itself to it is, first, there's no authority. In this state or anywhere that I've seen in the United States that says a unit of work cannot be an element of time also. Usually the piece rate has been tied to production of something like clothing, for example, or something coming off a production line, or in agriculture, for example, picking, filling baskets of fruit or vegetables or whatever. Yes, Your Honor. That's generally been tied to piece rate. It has, Your Honor. And so there's no doubt that historically that's the truth. Judge Kuhnhauer recognized that and said, well, you know, you may have a reasonable argument. In call centers, in this call center, they used to pay based on calls, which I think would fall within everybody's understanding of piece rate. They moved to production minutes to meet the needs of their employees and the concerns to their employees because their employees were concerned that somebody spending 30 minutes on a call was getting paid the same as someone spending a minute on a call. Well, let me ask you this. If we, let's say we did decide that we, I'm talking hypothetically, decided to certify this, how would you frame the question? Your Honor, what I wouldn't do is certify it the way that plaintiff's counsel would suggest because I think that that certification. That's saying what you wouldn't do. How would you frame the question? Yes. Let's be positive here. Okay. They don't like to be positive. They just like to say what's wrong with everything else. But tell me what the right question would be. I would think that the correct question would be whether compliance with the Washington minimum wage rate can be determined on a workweek basis when an employer calculates and pays its employees under a written compensation plan that calculates a weekly amount for all time worked that uses quality, efficiency, and production metrics, including a production metric called a production minute. That's the question you want us to certify to the Washington Supreme Court? I would think that that would fairly characterize the plan and ask the court whether or not that plan in the multifaceted aspects of it meet compliance requirements. Okay. This is why you're not a judge yet because when you put things in your questions that something fairly does this and that, you know, you have to ask a question that doesn't mirror the answer you want to get. You have to put the legal issue. So, I mean, your question had a lot of that fairly does this and that and the other thing, and therefore, and would anyone answer it differently than you do? Well, and that was my concern about their question is they assume it's paid by a minute, and we would suggest that it is not paid by a minute. I mean, the court could pose a simple question of does the ABC plan, with its many components, meet the requirements of the Minimum Wage Act. Well, that's more objective. I give you that. Or the administrative code. Or the administrative code adopted or the administrative policies adopted under the Minimum Wage Act. Yes, Your Honor. I agree with Judge Callahan with what she said about the question that you want to certify. There were a lot of different words going on and things happening. It would seem to me that what you're trying to say, maybe I'm not hearing you but I'm trying to narrow it down, would be is compliance with the Washington Minimum Wage Act calculated on a per hour basis or workweek basis when one component of the employer's compensation plan includes production minutes as a metric? If you narrow it down, was that narrowing it down a little bit so it's not kind of all over the place? Is that what you're? I think that reflects, fairly reflects the issue, Your Honor. Okay. Thank you. Why don't we let you save that balance of your time for rebuttal. Thank you, Your Honor. We'll hear from you. Good afternoon and may it please the Court. My name is Mark Cody and I represent Tiffany Hill and the class in this case. There is no dispute under Washington law that hourly workers are entitled to be paid no less than minimum wage for each hour that they work. And we know that the call center workers in this case were paid for some of their time worked and were not paid for other time worked. The question presented for you today is whether they were hourly workers or something else. The district court reached the common sense conclusion that these workers were hourly workers because they were paid based on precise measures of time, minutes and hours. This court should affirm that conclusion. Well, he sort of hemmed a little, you know. He didn't, it's more analogous to hourly wage, hourly rate. Actually, Your Honor, I want to read his conclusion on ER 9 because I disagree with my colleague's depiction of what he said. It says, quote, the court concludes that the Federal Way employees are hourly workers because production minutes are simply calculations of units of time. That's exactly what he concluded. These workers are not paid weekly salaries. They are not paid commissions. They are not paid piece rates. What Xerox did is it dissected every single minute of their day. It paid them hourly rates, which they then converted to per minute rates for time spent on inbound calls. It paid them hourly rates for time spent in certain defined activities. Let me ask you this. This seems to be like a unique industry, right, call center industry. How else, why couldn't you do it this way? I mean, I don't understand why you couldn't do it this way. It's a good question, Your Honor, and Xerox could do it this way, so long as they pay at least minimum wage for the time worked that they're currently not paying for. They can incentivize people to be on the phone receiving calls. They can use different metrics to set the rates higher, as they do right now, if people are more efficient and they're giving quality service to the customers. What we're asking is that you also still pay for every minute they work, because these call center workers. So when you say for every minute they work, you mean for every minute they're at the job site? Yes, Your Honor. So these workers have no control over the situation. When there are no calls coming in, when they're waiting for calls, they're receiving no pay whatsoever. It's not like an apple picker who can continue picking apples and adding to their piece rate pay. These workers, if they have to make an outbound call to a customer, they have no control. They can't receive an inbound call at that time. They can't receive any pay for that time. And that's what differentiates this from a true piece rate system in which someone can earn the piece rate at all times. But then they equalize it at the end. If everything comes out that it would be less than the hourly rate, they get the hourly rate by this subsidy payment or whatever. They get it only on a workweek average basis. And so there's an example of this on pages 9 to 10 of our brief where Ms. Hill had five and a half hours of unpaid time in which she was making outbound calls and she was waiting to receive calls. And what Xerox did is it took pay that she had already received for that inbound call work and it spread that across the week. And then it got her up to this workweek average of minimum wage by giving her $2.87 of subsidy pay for that five and a half hours of work. How would you frame the question if we certified it? How about Judge England's question? Well, I think that I would certify it slightly differently. We proposed that the court certify the question, is minimum wage act compliance measured on a per hour basis or a workweek basis for an employee who is paid per minute rates? And the issue here is this word production minutes that Xerox continues to use is just a label for the minutes they actually pay for. That's the problem, that they only pay for that time. And so I don't think it would be fair to use that label, which is simply their way of trying to portray this as a piece rate system when, in fact, they're only paying by unit of time. In addition, I think, Your Honor, we filed this motion to certify the question to the Washington Supreme Court approximately two years ago. And the primary goal was to get a definitive ruling from the Washington Supreme Court without delay before we had to do the briefing and oral argument here so that we wouldn't have to do a full set of briefing here and have oral argument and then do the same thing again with the Washington Supreme Court. And we think that there is no doubt under the law that for hourly workers, for people paid based on units of time, Washington applies a per hour measure. If you look at what this court said in the Alvarez case, it's undisputed that it violates the Washington Minimum Wage Act to fail to pay hourly workers for any time worked. And in Drinkwits, the Washington Supreme Court emphasized that an employer cannot avoid the requirements of the Minimum Wage Act by creating a pay system that is, quote, a subterfuge for hourly employment. That is exactly what this is. Did you ask Judge Cougar to certify it to the Washington Supreme Court? We did not. Xerox? Well, I'll tell you how it happened. So Xerox brought their motion for summary judgment. Judge Cougar ruled in our favor. Xerox filed a motion for reconsideration, and in that motion Xerox asked in the alternative after it had lost that the court certify it to the Washington Supreme Court. The court instead decided to certify it for interlocutory review.  But if I don't win, then let's certify. And not just this case, but that seems to be the certification gets interesting when you lose. I understand. And I want to make it clear that we won below, and we asked for certification for an efficient resolution of a case that's been pending for five years on behalf of low-wage workers who are simply waiting for their pay. You asked earlier whether or not this plan is still in existence. Is it gone, this ABC plan? My understanding is that it is gone. Do other employers in the state of Washington do something similar to this? I've never seen anything like this. I represent a lot of piece rate workers, farm workers, but I've never seen anything like this where someone who's paid an hourly rate that is then converted to a per-minute rate claims that their system is piece rate just because they don't pay for all the time worked. How many employees were affected by this? I believe there are about 10,000 employees in the class, but employees at the Verizon call centers, I think there are at least a few thousand that are affected by this system. I do want to speak for a moment about Alvarez, and then I want to talk about Sukuma if I have the time, because that's an important case as well. In Alvarez, this court rejected the workweek averaging approach under the Washington Minimum Wage Act and held that employers must pay hourly employees no less than minimum wage for each hour worked. That is that Washington applies a per-hour standard for minimum wage compliance. In the 14 years since this court decided the Alvarez case, no one has said that this court reached the wrong decision on the per-hour measure, not the Washington legislature, not the Washington courts, not the Washington Department of Labor and Industries, and not even Xerox here today. Alvarez represents the law of Washington, and there is no Washington case that says that you can take workers who are paid by unit of time, hourly workers who have their rates converted to per-minute rates and average their pay for that time they're paid for across the week to meet a minimum wage average and satisfy the Minimum Wage Act. I do want to point the court to an important page in the record which shows exactly what Xerox is doing here, and that's SER 302, and that is a master rate table which shows that Xerox views these rates as hourly rates. This is a master rate table at another call center in Washington that Xerox operates, and it shows the hourly rates, and then it shows the division into the per-minute rates, and it's not a simple $0.18 per minute. It takes an hourly rate, and then it says 0.1804 or something along those lines with four decimal points, which clearly shows that they start with hourly rates. They view these as hourly rates until this litigation began. Now, Xerox's approach has been, and its position has been premised on the fact or on the argument, excuse me, that these workers are peace workers. As we have explained and as the district court properly concluded, they are not peace workers but hourly workers because they're paid based on precise measures of time. But even if Ms. Hill were a peace worker, Xerox's position would still not be supported by the law. To be clear, the minimum wage requirement in Washington is an RCW 49-46020, excuse me, for both peace workers and hourly workers, and that provision speaks only of a minimum wage rate per hour. It doesn't say anything about any workweek averaging or workweek analysis. In Lopez de Metro v. Sakuma, the case that my colleague mentioned, that case was decided after the primary briefing in this case, and the Washington Supreme Court rejected the very same workweek averaging argument that Xerox is making here today. It held that even employers who pay by peace rate have to separately pay workers at hourly rates for their rest break time, and the court held that a peace rate is earned only when the employee is actively producing. So if these were peace rates, the way this would be looked at by the Washington Supreme Court is the production minutes are paid only at the time in which they're being earned, only in that inbound call time. So does the Washington Supreme Court pretty readily accept certifications from this court? I believe it does. I have not seen a case in which the Washington Supreme Court has declined to answer a question. Okay, because in California they don't get them regularly, but some courts do more than others. I think the Washington Supreme Court does readily. Their rules suggest that they're pretty generous in taking these cases. In Sakuma, the court rejected this concept that you can fold payment into a peace rate for other hours worked, fold payment for these so-called nonproductive hours into a peace rate, when it rejected the employer's argument that its workweek average from the peace rates that allegedly included time for rest breaks was somehow sufficient to pay for those rest breaks. If rest break time must be separately compensated under a peace rate plan, then surely active hours of work, actually making outbound calls or waiting for calls and other duties, would have to be separately compensated under Washington law to comply with the Minimum Wage Act. The key principle in the Sakuma case that the Washington Supreme Court decided is that it violates Washington law to take money that employees have already earned for certain hours worked and to use that money to pay for other hours that are otherwise uncompensated. So between Alvarez, which is clear authority that hasn't been challenged, and Sakuma, we think this court has adequate authority to simply affirm the district court's conclusion that not only were these workers hourly workers, but the Xerox failed to pay them for each hour that they worked. Just to be prudent, how would you frame, if we were to decide to certify, how would you frame the question? Yes, our framing is simply that is minimum wage compliance measured on a per hour basis or a workweek basis for an employee who is paid per minute rates? And if you look at this question about are they production minutes or are they per minute rates, I think it's important to look at the deposition testimony from Xerox officials. Xerox's vice president admitted in his deposition that the workers are paid by the minute. That's at SER 125. Xerox itself admitted this in a Rule 30b-6 deposition at SER 243. Right. And the plans themselves list rates per hour and rates per minute. Well, the problem with, you know, I think the way you framed the question is that in their mind or in their view, they equate the piece as the minute. I mean, in their view, time spent answering the call is producing something, right? I think that is their view, and there's just no Washington case that supports that view. Well, the Washington Supreme Court could say, yeah, times have changed. You know, we're no longer in the we have to accommodate the changing economy. Employers should be more flexible in how they do piece rates. Really an incentive plan is really what it is. Well, and I want to make it clear that we are not challenging an employer's ability to have an incentive plan. The employer could have the exact same plan they had under ABC and still pay for each hour worked at no less than the minimum wage. They can still incentivize what they'd like to incentivize. So, in conclusion, no one disputes that Washington employers must pay hourly workers no less than minimum wage for each hour worked. The dispute here is whether an employer can avoid this requirement by converting hourly rates to per minute rates. Regardless of the label, the workers here were paid based on precise measures of time. And so the district court correctly decided they were hourly workers, and this court should affirm that. Thank you. Thank you. I think you had a minute and a half, a minute and 20 seconds. Thank you, Your Honor. What I'd like to do to start with is address Mr. Cote's comment about per hour, because I think it's a very important distinction. Under California, the wage orders talk about a rate per an amount per hour. That is not what RCW 4946020 states. It states that employers must pay amounts at a rate of no less than a certain amount. Rate means ratio or proportion, and that's what the Washington Supreme Court said in the Ennis v. Candy decision. It looked at a weekly payment amount and said that you can look at the proportion of payment and apply it to each hour. If you look at the plan in this case, the ABC plan provides that the pay is for all hours worked, and it lists all of the incremental types of time that it applies to. Now, Mr. Cote said, well, it's different than an apple picker, but an apple picker has to walk between trees, and an apple picker has to carry the box to turn it into the truck. That's not picking time. It's paid by the rate, and that is no different than what happens here. Finally, I'd like to call your attention to the couple of other decisions we supplemented to the court, the Mendis and Heldy decision, the Mendis decision from Judge Kuhnauer, who recognized that their per hour argument is not successful. Your Honors, the court looked at clear law, looked at undisputed facts, and reached the wrong conclusion. We would encourage you to reach the correct conclusion that this was not an hourly plan and that summary judgment was appropriate. Thank you, Your Honors. Okay. Thank you very much. Interesting case, and the matter is submitted at this time.
judges: Paez, Callahan, England